Byron G. Martin (#8824)
Steven M. Edmonds (#15592)
STRONG & HANNI
9350 South 150 East, Suite 500
Sandy, Utah 84070
Telephone:  (801) 532-7080
Facsimile:   (801) 596-1508
bmartin@strongandhanni.com
sedmonds@strongandhanni.com

Leah A. Tedford (*pro hac vice*)
John G. Papianou (*pro hac vice*)
Layal Issa Ramirez (*pro hac vice*)
Andrew Notaristefano (*pro hac vice*)
MONTGOMERY MCCRACKEN
WALKER & RHOADS LLP
1735 Market Street
Philadelphia, PA 19103
Telephone:  (215) 772-7401
Facsimile:   (215) 772-7620
ltedford@mmwr.com
jpapianou@mmwr.com
lramirez@mmwr.com
anotaristefano@mmwr.com

*Attorneys for HireRight, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| MEGAN THERESA CHASE,<br><br>Plaintiff,<br><br>vs.<br><br>HIRERIGHT, LLC,<br><br>Defendant. | **DEFENDANT HIRERIGHT, LLC'S AMENDED MOTION TO EXCLUDE PLAINTIFF'S EXPERT DR. ROY LUBIT**<br><br>**Case No. 1:23-cv-00107-HCN-JCB**<br><br>**Judge: Howard C. Nielsen, Jr.**<br>**Magistrate: Judge Jared C. Bennett** |

## SPECIFIC RELIEF SOUGHT AND GROUNDS FOR RELIEF

Defendant HireRight, LLC moves to exclude Plaintiff Megan Chase's proffered emotional damages expert, Dr. Roy Lubit, under Federal Rule of Evidence 702.[1]

In September 2021, Plaintiff applied for a job with Alorica and told Alorica that she had zero misdemeanor convictions. HireRight's background check later revealed she had five. Alorica did not hire Plaintiff because she failed to disclose that criminal history. Nonetheless, Plaintiff sued HireRight, claiming that Alorica did not hire her because HireRight should have reported that one of her five undisclosed criminal convictions had been reduced to an infraction and dismissed.

Nothing in the record supports Plaintiff's theory. Alorica's witness testified that the company didn't care about any particular conviction but, rather, her failure to disclose them. So, to save her claims, Plaintiff engaged a psychiatrist, Dr. Lubit, to opine on the "emotional injuries" she supposedly suffered from her failed job application. His expert report—which he later claimed was an incomplete draft—baldly asserts that Plaintiff suffers from "anxiety disorder, depression and the symptoms of PTSD, as well as betrayal trauma" from her failed effort to get the job. Plaintiff's effort is transparent. She knows she cannot recover economic damages because she cost herself the Alorica job. But if she can cobble together an "emotional distress" story, she can get to a jury. It won't work. Dr. Lubit's worthless and unreliable opinions cannot save her case.

Dr. Lubit's opinions are inadmissible for three reasons. *First*, he never ties HireRight to any of Plaintiff's emotional injuries. Indeed, none of his opinions even mentions HireRight; they

---

[1] The Court can grant HireRight's pending summary judgment motion, Dkt. No. 59, without ruling on Dr. Lubit's exclusion. *See* Dkt. No. 56 at V. But out of an abundance of caution, HireRight files this motion to demonstrate that his opinions should not be considered in deciding summary judgment.

focus solely on Alorica, her prospective employer. Moreover, his report details a series of traumatic events in Plaintiff's life (*e.g.*, childhood and spousal abuse) that are far more likely sources of her mental health struggles, yet never even tries to explain why they should be ruled out. As he admitted, that's in part because his draft report omitted "crucial" information—an error Plaintiff never cured. *Second*, Dr. Lubit's "betrayal trauma" diagnosis is made up. He offers no medical source for it in his report, and the only oblique reference he could muster in his deposition contradicts his theory. *Third*, Dr. Lubit's deposition revealed that his opinion that Plaintiff suffered "PTSD symptoms" was meant to cover an entirely different diagnosis—an "adjustment reaction" disorder—which is inadmissible because it was not properly disclosed.

The Court should exclude Dr. Lubit's chaotic causation opinions because they will neither help the jury, nor are they reliable. Under Rule 702, they are inadmissible.

## DR. LUBIT'S PROFFERED OPINIONS

To form his opinions about Plaintiff's emotional damages, Dr. Lubit interviewed Plaintiff, assessed her mental health using standardized questions, and reviewed her deposition and the Complaint. **Exhibit 1** (R. Lubit Expert Report, Jan. 27, 2025) at 1, 4. In his report, he summarized numerous traumatic events Plaintiff has suffered (unrelated to her Alorica application), including:

- Her mother was a violent alcoholic who was "mean when she was drunk."
- Her mother told her during her teenage years that she was the product of rape.
- She became pregnant and married at seventeen. Her first husband was schizophrenic and abused drugs, and, on at least one occasion, tried to lock Plaintiff out of her own house with her children inside.
- She had a second "horrible" marriage, and her husband died from an aneurysm.
- While working at a 7-11 store, she was harassed and falsely accused of stealing by the store owners, when she believes the owners were embezzling from the

company. She was eventually charged with a class B misdemeanor after admitting she had forgotten to pay the company back for a pack of cigarettes.

Ex. 1 at 1–3.

Importantly, Dr. Lubit did not explore Plaintiff's mental health status immediately before she applied with Alorica in September 2021. He nevertheless opined that, "[t]o a reasonable degree of medical certainty," Alorica's actions caused her "generalized anxiety disorder, depression and the symptoms of PTSD, as well as betrayal trauma." *Id.* at 9–10. Specifically, he opined:

1. To a reasonable degree of medical certainty, Megan is suffering from generalized anxiety disorder, depression and the symptoms of PTSD, as well as betrayal trauma. Megan cannot be diagnosed with PTSD as a result of the actions of Alorica because the actions did not constitute a threat of serious physical injury or sexual violence. Nevertheless, she has sufficient symptoms of PTSD to fulfill the symptomatic criteria. The symptoms [Plaintiff] has and the enduring damage to her mental health are the result of the actions of Alorica, claiming incorrectly believing that she plead guilty to a crime she did not plead guilty to and which the district court rejected.

2. Megan experienced betrayal trauma when Alorica offered her a position, and then took it back based on false information and then failed to quickly rectify it. In the aftermath she could not obtain a job in which companies did background checks. She could not do the work she expected to do and wanted to do and instead had to look for and settle for less desirable positions. In addition, an individual suffers harm when their reputation is attacked, especially when it is online for endless numbers of people to see. Evolutionary psychology would suggest that people have been hard wired by evolution to care about their reputation and be very upset if it is damaged.

*Id.* These opinions are factually and medically baseless.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, Plaintiff must prove by a preponderance of the evidence that any proffered expert testimony is (1) helpful to the factfinder and (2) reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590–91 (1993). An opinion is helpful only when it "logically advance[s] a material aspect of the case [and is] sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia,* 635 F.3d

472, 476 (10th Cir. 2011) (quotations and citations omitted). It is reliable only when the expert's "underlying reasoning and methodology" are sound. *U.S. v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). That means the opinion must not: be "connected to existing data only by the *ipse dixit* of the expert," *Riegler v. Carlisle Cos., Inc.*, No. 22-CV-752-RJS-CMR, 2023 WL 2614508, at *10 (D. Utah Mar. 23, 2023); be based upon "subjective belief[,]"; constitute "unsupported speculation," *Daubert,* 509 U.S. at 590–91; fail to "adequately account[ ] for obvious alternative explanations," *Taber v. Allied Wast Sys., Inc.*, 642 F. App'x 801, 810–11 (10th Cir. 2016) (internal quotation omitted); or rest on "incorrect facts on material issues," *Basic Rsch., LLC v. FTC*, 2014 WL 12596497, at *11 (D. Utah Nov. 25, 2014); or on misinterpretations of underlying sources, *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1346 (Fed. Cir. 2025).

## ARGUMENT

**I. Dr. Lubit's bald assertion that Plaintiff's symptoms and emotional distress "are the result of the actions of Alorica" is neither helpful nor reliable.**

Dr. Lubit's broad causation opinion fails to meet both Rule 702 requirements. It cannot help the jury because he says nothing about HireRight, and it is unreliable because he has no data to support it. The Court should exclude it.

**A. An opinion blaming Alorica would not help a jury decide claims against HireRight.**

Dr. Lubit's causation opinion does not mention HireRight. Instead, he opines that Alorica, Plaintiff's prospective employer, caused Plaintiff's emotional distress: "[T]he enduring damage to her mental health are the result of the actions of Alorica, claiming incorrectly that she plead guilty to a crime she did not plead guilty to and which the district court rejected." Ex. 1 at 9. And, he says, Plaintiff "experienced betrayal trauma when Alorica offered her a position, and then took it back based on false information and then failed to quickly rectify it." *Id.* at 10. When HireRight's

counsel asked Dr. Lubit in his deposition to distinguish between HireRight's role and Alorica's in Plaintiff's damages, he refused to do so. **Exhibit 2** (R. Lubit Dep.) Day 2 at 60:4–16, 61:9–14.

But HireRight is not Alorica. Alorica is not even a party. And HireRight merely ran a background check on Plaintiff; HireRight never gave or rescinded a job offer. Moreover, Alorica decided not to hire Plaintiff because she disclosed no misdemeanor convictions when she has five. **Exhibit 3** (R. Fox Dep.) at 18:18–28:11, 44:8–24, 46:7–10, 64:9–15, 68:25–69:21, 81:8–16. Dr. Lubit's failure to distinguish HireRight from Alorica renders his opinion unhelpful to the jury. And the fact that Dr. Lubit relies on fundamental mistakes of these material facts provides an additional basis to exclude his opinion. *See Basic Rsch.*, 2014 WL 12596497, at *11 (excluding testimony for material factual errors); *Craig v. Xlear, Inc.*, 2019 WL 1119429 *7–9 (D. Utah Mar. 11, 2019) (excluding opinion for "assum[ing] key facts" and "ignoring" others).

While Dr. Lubit at his deposition pivoted to blame HireRight, Plaintiff's Rule 26(a)(2) disclosure—by rule—was to contain "a complete statement of all opinions" Dr. Lubit would offer. Fed. R. Civ. P. 26(a)(2)(B)(i). Plaintiff "cannot cure deficient expert reports with [Dr. Lubit's] deposition[]." *T.R. v. Howard*, No. CV 20-276, 2024 WL 915251, at *3 (D.N.M. Mar. 2, 2024); *Cope v. Auto-Owners Ins. Co.,* No. 18-CV-0051-WJM-SKC, 2023 WL 8455203, at *4 (D. Colo. Dec. 6, 2023) (noting Rule 26(a)(2) prohibits amending expert reports through deposition testimony). Accordingly, Dr. Lubit cannot help the jury determine whether *HireRight* caused Plaintiff any emotional damages.

### B. Dr. Lubit's opinion tying Alorica's decision to Plaintiff's current mental health is unreliable because he offers no facts to support it.

Dr. Lubit's causation opinion also fails because it is unreliable in two ways. *First*, Dr. Lubit's conclusion "simply does not follow from the data" in the record, *Norris v. Baxter*

*Healthcare Corp.*, 397 F.3d 878, 885–86 (10th Cir. 2005) (internal quotation omitted), because he did not explore Plaintiff's mental health immediately before she applied with Alorica. He offers only a current snapshot of Plaintiff's mental health and her long history of trauma. His report thus provides no basis for concluding that Alorica—let alone HireRight—impacted her mental health. That is a failure of basic logic: He has no basis for asserting that Alorica's decision not to hire Plaintiff (as opposed to any of the other, far worse incidents that she suffered during her life) affected her mental health. If anything, his review of her difficult life confirms that an initial mistake on HireRight's report—which HireRight quickly corrected—could not have caused her current mental state.

Dr. Lubit all but admitted that his failure to investigate Plaintiff's emotional status before HireRight's report discredited his opinion. This missing information was "crucial," "the whole point," and "it would be quite wrong" not to inquire about it. Ex. 2 (Lubit Dep.) Day 1 at 89:4–11, 99:21–100:11. He explained, "one desperately needs to state how the person's functioning before" the incident and that, without this data, his opinion is "meaningless." *Id.* at Day 2, 122:3–123:10. The "why" is obvious: "without specifically asking about how the person was functioning before . . . you can't really explain or say how that someone has been injured because . . . they may have had those symptoms beforehand." *Id.* at 124:6–17.

Confronted with this lack of data, Dr. Lubit testified he mistakenly submitted a draft report. *Id.* at Day 1, 87:9–91:5, 98:22–100:11. Despite that admission, **Plaintiff never supplemented Dr. Lubit's report**. So Plaintiff has offered *no* opinions about whether HireRight caused her emotional distress. And it is too late now. She cannot use Dr. Lubit's deposition testimony or any belated opinions to remedy the omission. *See* Fed. R. Civ. P. 26(a)(2)(B); *T.R.*, 2024 WL 915251, at *3.

*Second*, Dr. Lubit's conclusion fails to "adequately account[] for obvious alternative explanations"—namely, the serious trauma Plaintiff experienced throughout her life. *See Taber*, 642 F. App'x at 810–11. Indeed, Dr. Lubit offered other compelling data that shows Plaintiff "may have had those symptoms" from numerous traumatic events she experienced well before she applied for a job with Alorica. Ex. 2 (Lubit Dep.) Day 2 at 124:9–17. Childhood abuse, spousal abuse, even the false accusation of stealing from 7-11 leading to unfair criminal charges, are all far more obvious causes of her current distress than a mistake on a consumer report that HireRight quickly fixed and which had nothing to do with Alorica's decision.

Dr. Lubit never tried to rule out Plaintiff's traumatic life circumstances as potential causes of her current issues. To the contrary, he expressly tied many of her "PTSD symptoms" to the 7-11 incident in 2017. For example, Dr. Lubit found that Plaintiff suffers from "intrusive memories" because she "is triggered going by going by 7-11 and feels disgusted, depressed, disappointed, and anxious" and thinks about "being accused of something she didn't do." Ex. 1 at 8. Likewise, he opined that she avoids "distressing, memories, thoughts or feelings" or "external reminders" about the "traumatic event"—because she "avoids the specific 7-11 where the problems occurred and 7-11 stores in general." *Id.* That may be true. But it has nothing to do with HireRight.

In short, Plaintiff's traumatic life events are a more obvious explanation for her current mental state than an inaccurate background report that did not cost her a job. Dr. Lubit's utter failure to account for her life is a third basis to exclude him. *See Taber*, 642 F. App'x at 810–11.

**II.     Dr. Lubit's imaginary "betrayal trauma" opinion is unreliable because it is not a real diagnosis and is unhelpful to the jury because Dr. Lubit's opinion is unfounded.**

Dr. Lubit's "betrayal trauma" opinion also fails because it is similarly unreliable and unhelpful. Dr. Lubit opined that Plaintiff "experienced betrayal trauma when Alorica offered her

a position, and then took it back based on false information and then failed to quickly rectify it." Ex. 1 at 9–10. He says this prevented her from "do[ing] the work she expected to do and wanted to do" and caused additional damage when her "reputation [was] attacked . . . online for endless numbers of people to see." *Id.* at 10. But HireRight never published its background check online or to anyone other than Alorica. Dr. Lubit cannot make up facts to craft a helpful opinion. *See Basic Rsch.*, 2014 WL 12596497 at *11. More fundamentally, "betrayal trauma"—at least as Dr. Lubit defines it—is a fabricated diagnosis. The court should exclude it as unreliable.

According to Dr. Lubit, "Betrayal trauma is the emotional harm suffered when an individual or institution that someone relies on for important needs (protection, emotional support, livelihood) seriously violate the person's welfare or trust." Ex. 1 at 9–10. He testified this includes any "institution that one would expect would treat you fairly," Ex. 2 (Lubit Dep.) Day 2 at 46:3–7, including a "large institution that has significant power over our welfare or getting a job we really want," *id.* at at 60:22–61:8. According to Dr. Lubit, any time such institution "behaves in very poor ways and is sloppy, careless, whatever . . . people sometimes feel betrayed." *Id.*

Dr. Lubit never identified the source of this opinion. His report identified no source. And while Dr. Lubit testified that "betrayal trauma" was a concept the psychologist "Jennifer Freyd and her disciples" developed, Dr. Freyd's definition of "betrayal trauma" does not apply to any "institution" that makes a poor decision or acts in a "sloppy" way. *Id.* at 44:18–24. Rather, as one might suspect, Dr. Freyd's researched definition involves an institution one depends on or trusts for care or protection, but which instead causes harm. **Exhibit 4** (J. Kovnick Report) at 18. Dr. Freyd's examples of those institutions letting down people who depend on them include "unchecked abuse in residential schools," "insufficient and/or lacking official responses to sexual

trauma in the military"; "systemic difficulties in services provisions for veterans with chronic health issues"; and "elder abuse in residential care settings." *Id.* A consumer reporting agency that prepares a background report on a job applicant is not that kind of institution.

Properly understood, then, "betrayal trauma" has nothing to do with this case. Plaintiff had no relationship with HireRight before, during, or after she applied for a position with Alorica. Nor did she even contract with HireRight to conduct the background check; Alorica did. Because it rests on a fundamental misunderstanding of Dr. Freyd's theory, Dr. Lubit's opinion that Plaintiff suffered "betrayal trauma" is unreliable. *See EcoFactor, Inc.*, 137 F.4th at 1345–47 (excluding expert testimony that relied on misinterpretations of sources underlying opinion).

Neither Dr. Lubit's report nor his testimony offers any other legitimate source for his unique version of "betrayal trauma." When pressed, he could barely recall any specifics of the theory. *See* Ex. 2 (Lubit Dep.) Day 2 at 44:16–57:19. Dr. Lubit's report thus prevents the Court from "assess[ing] the reasoning and methodology underlying" his opinion. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1125–26 (10th Cir. 2006). An opinion based on an unsupported, made-up condition is not reliable. *See Farris v. Intel Corp.*, 493 F. Supp. 2d 1174, 1182–83 (D.N.M. 2007) (excluding opinion where expert "did not identify a single article, study, or report anywhere in his deposition testimony to support his theory of injury").

This is not the first time Dr. Lubit has made things up on the fly. Another court held he failed to comply with Rule 702 and *Daubert* for citing no relevant authority for his sweeping conclusions. *Treminio v. Crowley Maritime Corp.*, 2021 WL 8004591, *15–16 (M.D. Fl. Nov. 17, 2023). In excluding his testimony, the court determined his unsupported opinions were both unreliable and unhelpful, noting "[s]uch contrasting opinions, unfounded in any authority or cited

personal experience to the matter, have been consistently rejected." *Id.* at *16. Dr. Lubit's groundless "betrayal trauma" opinion should likewise be excluded.

### III. Dr. Lubit's conclusion that Plaintiff suffered "symptoms of PTSD" is misleading, confusing, unclear, and unhelpful to the jury.

Dr. Lubit dedicates much of his report to discussing the symptoms of PTSD, yet states Plaintiff "cannot be diagnosed with [it]" because she does not have the requisite exposure to a traumatic stressor, while at the same time concluding she "meet[s] the diagnostic criteria" for PTSD and should be prescribed medication for it. Ex. 1 at 8–9, 17. When asked to clarify those conclusions, Dr. Lubit testified he diagnosed Plaintiff with "adjustment reaction" disorder, which was not disclosed in his report. Ex. 2 (Lubit Dep.) Day 1 at 164:23–167:18; Day 2 at 28:2–34:18 ("I'm going to go with she had adjustment disorder"). He asserted the disorder is "inherent within the statement that she has the symptoms of PTSD." *Id.* Nevertheless, he refused to identify the cause of that disorder in Plaintiff. He claims his lengthy discussion of the "symptoms" of PTSD in his report is important to forensic work, but acknowledged the discussed symptoms could "be symptoms of any other disorder," as Plaintiff does not have the requisite exposure to a traumatic stressor for them to be symptoms of PTSD. Ex. 2 (Lubit Dep.) Day 1 at 143:6–146:19.

Dr. Lubit's amorphous opinions regarding Plaintiff's PTSD-symptoms-without-PTSD cannot stand in for a completely different diagnosis omitted from his report. His deposition clarified that, again, his report failed to properly disclose his true opinion in violation of Federal Rule 26(a)(2). The "PTSD" and "adjustment disorder" opinions must likewise be excluded.

### CONCLUSION

Because Dr. Lubit's causation opinions are fundamentally unreliable and unhelpful to the jury, the court should exercise its essential gatekeeping function and exclude them.

|  |  |
|---|---|
| DATED August 21, 2025 | STRONG & HANNI |
|  | */s/ Steven M. Edmonds* |
|  | Byron G. Martin (#8824) |
|  | Steven M. Edmonds (#15592) |
|  | 9350 South 150 East, Suite 500 |
|  | Sandy, Utah 84070 |
|  | |
|  | MONTGOMERY MCCRACKEN WALKER & RHOADS LLP |
|  | |
|  | Leah A. Tedford (*pro hac vice*) |
|  | John G. Papianou (*pro hac vice*) |
|  | Layal Issa Ramirez (*pro hac vice*) |
|  | Andrew Notaristefano (*pro hac vice*) |
|  | 1735 Market Street |
|  | Philadelphia, PA 19103-7505 |
|  | |
|  | *Attorneys for Defendant HireRight, LLC* |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2025, a true and correct copy of the foregoing **DEFENDANT HIRERIGHT, LLC'S AMENDED MOTION TO EXCLUDE PLAINTIFF'S EXPERT DR. ROY LUBIT** was served by the method indicated below, to the following:

| | | |
|---|---|---|
| Steven R. Sumsion | (X) | Electronic Filing |
| Aspen M. Jensen | ( ) | Email |
| SUMSION BUSINESS LAW | ( ) | U.S. Mail, Postage Prepaid |
| 1800 Novell Place, 5th Floor | ( ) | Hand Delivered |
| Provo, UT 84606 | ( ) | Overnight Mail |
| steve@businesslawutah.com | ( ) | Facsimile |
| aspen@businesslawutah.com | | |

Devin Fok
Joshua Kim
DHF LAW, PC
2304 Huntington Drive, Suite 210
San Marino, CA 91108
devin@devinfoklaw.com
joshua@devinfoklaw.com

*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Joani Pearson*